**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | |
| **MLCJR, LLC, *et al.*,** | § | **Case No. 23-90324 (CML)** |
| | § | |
| **Debtors.[1]** | § | **Jointly Administered** |
| | § | |
| | § | |
| | § | |
| | § | |
| **R. & R. BOATS, INC., OFFSHORE** | § | |
| **LIFTBOATS, LLC, & SEACOR** | § | |
| **MARINE LLC,** | § | |
| | § | |
| | § | **Adv. Pro. No. 25-03782 (CML)** |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **GOL, L.L.C.,** | § | |
| | § | |
| **Defendant.** | § | |

**GOL, L.L.C.'S REPLY IN SUPPORT OF MOTION
TO DISMISS THE COMPLAINT**

Defendant GOL, L.L.C. ("Defendant" or "GOL") files this reply in support of its Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (Doc. No. 9) (the "Motion") the Complaint (Doc No. 1) filed by Plaintiffs R. & R. Boats, Inc. ("R&R Boats"), Offshore Lifeboats, LLC ("OLB") and SEACOR Marine, LLC ("SEACOR" and, collectively, with R&R Boats and OLB, "Plaintiffs" or "Operators," and each, an "Operator").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978). The Debtors' address is 4514 Cole Ave, Suite 1175, Dallas, Texas 75205.

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

ARGUMENT................................................................................................................. 2

    I.     The Court Should Dismiss the Complaint Under Rule 12(b)(1) Because the Court Lacks Subject Matter Jurisdiction............................................................... 2

         A.    Plaintiffs' Objection Shows They Have No Constitutional Standing to Seek Allocation of the Essential Vendor Payment ............................... 2

         B.    Plaintiffs' Objection Shows This Action is "Moot" and Not Justiciable.............................................................................................. 4

         C.    Whether this Matter is "Core" is *Irrelevant*, Because There Is No "Related to" Jurisdiction from This Action ............................................. 7

    II.    The Court Should Dismiss the Complaint Under Rule 12(b)(6) Because Plaintiffs Fail to State a Claim ................................................................... 9

         A.    The Complaint Fails the Plausibility Test Under the Facts Alleged........... 9

         B.    SEACOR's Claim is Barred by "*Res Judicata*" ..................................... 10

C<sub></sub>ASES

*Angel v. Tauch (In re Chiron Equities, LLC)*,
  552 B.R. 674 (Bankr. S.D. Tex. 2016) ........................................................................ 11

*Brown v. Felsen*,
  442 U.S. 127 (1979) .................................................................................................... 14

*Clewett v. Coverage One Ins. Group, LLC*,
  2024 WL 1962895 (S.D. Tex. May 3, 2024) .............................................................. 13

*Contiguity, LLC v. Conduent Business Servs., LLC*,
  2024 WL 252068 (W.D. Tex. Jan. 22, 2024) ............................................................. 13

*Corporate & Trustee Servs., Inc. v. Denney (In re Bass)*,
  171 F.3d 1016 (5th Cir. 1999) ................................................................................... 10

*Gulf Offshore Co. v. Mobil Oil Corp.*,
  453 U.S. 473 (1981) .................................................................................................... 16

*In re Friede Goldman Halter, Inc.*,
  602 B.R. 307 (Bankr. M.D. La. 2019) ....................................................................... 16

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 n.10 (5th Cir. 2007) ............................................................................. 13

*In re Peterman*,
  5 B.R. 687 (Bankr. E.D. Pa. 1980) ............................................................................ 16

*In re Rapid-Torc*,
  2016 WL 8710443 ...................................................................................................... 11

*In re TMT Procurement Corp.*,
  764 F.3d 512 (5th Cir. 2014) ..................................................................................... 10

*Infinity Emergency Mgmt. Group, LLC v. Neighbors Health Sys., Inc. (In re Neighbors Legacy Holdings, Inc.)*,
  645 B.R. 864 (Bankr. S.D. Tex. 2022) ........................................................................ 6

*Okpobiri v. Experian Info. Solutions, Inc.*,
  2025 WL 1270299 (S.D. Tex. April 18, 2025) ........................................................... 13

*Orix Capital Markets, L.L.C. v. Rafizadeh (In re Cyrus II P'ship)*,
  358 B.R. 311 (Bankr. S.D. Tex. 2007) ........................................................................ 7

*PHI Health, LLC v. WFAS, Inc.*,
  2021 WL 4150875 (S.D. Tex. June 1, 2021) ............................................................... 8

*Proctor & Gamble Co. v. Amway Corp.*,
  376 F.3d 496 (5th Cir. 2004) ..................................................................................... 13

*Ries v. Paige (In re Paige)*,
  610 F.3d 865 (5th Cir. 2010) ................................................................................ 14, 15

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 n.11 (1974) ............................................................................................. 7

*Superior Offshore Int'l, Inc. v. Schaefer*,
　　2012 WL 5879608 (S.D. Tex. Nov. 20, 20212) ...................................................... 16

*Travelers Indem. Co. v. Bailey*,
　　557 U.S. 137 (2009) ................................................................................................ 16

*Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*,
　　529 U.S 765 (2000) .................................................................................................. 7

*Yurls v. Bunton*,
　　905 F.3d 905 (5th Cir. 2018) .................................................................................... 8

## RULES

Fed. R. Civ. Proc. 12(b)(1) .................................................................................... 4, 6, 18

Fed. R. Civ. Proc. 12(b)(6) .......................................................................................... 4, 18

## INTRODUCTION[2]

In full retreat, Plaintiffs now contend they do not want the Court to rely on the Brokerage Agreements they attach to and incorporate in the Complaint.  Plaintiffs maintain they merely want the Court to allocate the Essential Vendor Payment based on the Trade Agreement and Essential Vendor Order, not based on the Brokerage Agreements.  But Plaintiffs cannot seek relief from the Court for an allocation as *bystanders*.  Plaintiffs need a legal basis to claim a right to the Essential Vendor Payment, something they all lack as neither the Trade Agreement nor the Essential Vendor Order provide Plaintiffs with such basis.

Despite being very well acquainted with bankruptcy,[3] Plaintiffs are litigating against GOL in pending actions in the District Court, a forum they each specifically chose, asking that court to award them a portion of the Essential Vendor Payment GOL received under the Trade Agreement. At least one of those plaintiffs, SEACOR, has already had its case thrown out.  Recently, the District Court *reaffirmed* its decision to do so, denying SEACOR's motion for reconsideration pursuant to the order attached hereto as **Exhibit A**.

Based on the well-reasoned and sensible decision by the District Court in the Order & Reasons, now *reaffirmed*, GOL submits that the other plaintiffs' lawsuits are also likely doomed.[4]  With the writing on the wall, Plaintiffs now make their way to this Court—like the wolf in Little Red Riding Hood—dressing up their complaint by claiming they are simply seeking an

---

[2] Capitalized terms shall have the meaning ascribed to them in the Motion, unless otherwise defined herein.

[3] Indeed, R&R Boats was a petitioning creditor who sought an involuntary petition in the U.S. Bankruptcy Court for the Eastern District of Louisiana.  *See* Bankr. Case Do. No. 5 (*Notice of Pendency of Prior Bankruptcy Case and Request for Status Conference*).

[4] In fact, OLB recently filed a Motion to Stay discovery in the OLB Action before the District Court, acknowledging that the companion case filed by SEACOR "involves almost identical issues and parties." *See* E.D. La. Case No. 24-02409, Doc. No. 42-1, p. 2.

"allocation" and an "apportionment" from the Court, having nothing to do with the Brokerage Agreements. The Court should not be misled by Plaintiffs' disguise.

Plaintiffs attempt to suggest their flawed Complaint has nothing to do with the Brokerage Agreements they entered into with GOL, and nothing to do with the lawsuits they filed against GOL in the District Court, is *beyond the pale*. Such an assertion is disingenuous when you consider the Brokerage Agreements are mentioned in the introductory paragraph of the Complaint, attached as exhibits, and mentioned at least 15 more times throughout the Complaint. And even if the Complaint had never relied upon the Brokerage Agreements, as Plaintiffs now pretend, those agreements are the *sine quo non* to Plaintiffs' right to even seek relief against GOL.

For these reasons as more fully explained below, and the reasons set forth in the Motion, the Court should dismiss the Complaint.

## ARGUMENT

**I.     The Court Should Dismiss the Complaint Under Rule 12(b)(1) Because the Court Lacks Subject Matter Jurisdiction**

**A.     Plaintiffs' Objection Shows They Have No Constitutional Standing to Seek Allocation of the Essential Vendor Payment**

By the Objection—as opposed to the Complaint—Plaintiffs attempt to elucidate their requested relief in this action. Plaintiffs posit the lack of allocation of the Essential Vendor Payment "has caused a host of problems," for them and relief from this Court is desperately needed to "clarify and determine precisely how $13 million of estate funds paid to GOL in partial payment of a $24.8 million prepetition claim should be allocated."[5] Plaintiffs even purport to ask for this relief to help them "determine what portion (if any) of their prepetition invoices remain

---

[5] Obj., pp. 2-3.

outstanding."[6]  But—as Plaintiffs well know—GOL has never paid them any part of the Essential Vendor Payment.  They know the answer to this misplaced rhetorical question because even their own Complaint admits that all of their invoices remain outstanding.[7]  Besides this, the District Court has already finally determined that with respect to SEACOR—none of its invoices will ever be paid from the Essential Vendor Payment.  Likewise, as for the other two plaintiffs, they have requested payment of their invoices from the District Court where those two plaintiffs chose to file their actions, and there is neither a reason nor a basis for this Court to infringe upon those District Court pending cases.

Plaintiffs also claim they are bringing the Complaint for the benefit of other creditors so that they will "enjoy a larger share of any distribution," but nothing could be farther from the truth. Plaintiffs are bringing this action to seek an allocation of the Essential Vendor Payment for themselves, an allocation the District Court has already expressly refused to give SEACOR. According to Plaintiffs, this allocation is not based on the Brokerage Agreements attached to and incorporated in the Complaint because "the allocation sought by Plaintiffs is critically important to core bankruptcy questions before this Court."[8]

In doing so, however, Plaintiffs have revealed something more relevant: they are without standing to request this relief.  "A court does not have the constitutional power to adjudicate a dispute involving a plaintiff that lacks constitutional standing: thus, warranting dismissal" under Rule 12(b)(1).  *Infinity Emergency Mgmt. Group, LLC v. Neighbors Health Sys., Inc. (In re Neighbors Legacy Holdings, Inc.)*, 645 B.R. 864, 877 (Bankr. S.D. Tex. 2022).  "To satisfy Article

---

[6] Obj., p. 2.

[7] Compl., ¶¶ 4, 35, 40.

[8] *Id.*, p. 5.

III's standing requirements, *a plaintiff must show* (i) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (ii) the injury is fairly traceable to the challenged action of the defendant; and (iii) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Orix Capital Markets, L.L.C. v. Rafizadeh (In re Cyrus II P'ship)*, 358 B.R. 311, 315 (Bankr. S.D. Tex. 2007) (emphasis added).

Here, without basing this action on the Brokerage Agreements, as Plaintiffs now allege, they have not and cannot show they could even claim a legal right to an allocation of the Essential Vendor Payment. Accordingly, with no right to receive an allocation of the Essential Vendor Payment, Plaintiffs have no standing to request one from this Court because they have not suffered an actual or imminent injury and, further, there can be no injury traceable to GOL. *See, e.g., Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 n.11 (1974) (noting "apprehension about claims of standing based on mere interest in a problem") (citations and quotations omitted); *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S 765, 771-72 (2000) (explaining "Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*, even though the court's judgment may benefit others collaterally) (citations and quotations omitted, emphasis added).

Therefore, the Court should dismiss the Complaint because Plaintiffs lack standing.

**B.        Plaintiffs' Objection Shows This Action is "Moot" and Not Justiciable**

Even if Plaintiffs could establish their standing to bring this action, which they have not and cannot do, if this action is not based on the Brokerage Agreements, then the Complaint is entirely "moot." In the Motion, GOL argues Plaintiffs have not alleged a justiciable controversy on "mootness" and "ripeness" grounds. This action is "moot" as to SEACOR because the District Court concluded GOL did not breach the Brokerage Agreement by not paying SEACOR any part

of the Essential Vendor Payment.  This action is not "ripe" as to R&R Boats and OLB because the District Court is currently adjudicating the same issues as in the SEACOR Action with respect to those plaintiffs.[9]  Instead of addressing GOL's arguments, Plaintiffs merely contend that because the relief they request is not based on the Brokerage Agreements, "mootness" and "ripeness" do not apply.

However, justiciability concerns have even greater importance after the Objection because if Plaintiffs are not basing the Complaint on the Brokerage Agreements, then this entire action is "moot."  In short, allocating the Essential Vendor Payment can have relevance as to Plaintiffs only if they have a legal right to payment from GOL for such payment.  Stated differently, with no legal right to payment of the Essential Vendor Payment from GOL, Plaintiffs have no right to request an allocation of such payment.  *See, e.g.*, *Yurls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (explaining that "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or *the parties lack a legally cognizable interest in the outcome*") (emphasis added).  Plaintiffs' right to seek allocation of the Essential Vendor Payment does not exist by fiat.  Instead, Plaintiffs' must establish a right to payment from GOL, which can arise, if at all, only under the terms of the Brokerage Agreements, not the Trade Agreement or Essential Vendor Order, as Plaintiffs wrongly suggest.  Indeed, for this reason, Plaintiffs brought the complaints they filed against GOL in the District Court.[10]

In this regard, Plaintiffs are not parties to the Trade Agreement and can establish no rights under it.  *See, e.g.*, *PHI Health, LLC v. WFAS, Inc.*, 2021 WL 4150875 (S.D. Tex. June 1, 2021) (explaining, under Texas law, that "[a]s a general rule, the benefits and burdens of a contract

---

[9] *See* Mot., pp. 12-13.

[10] *See* Complaints filed in the SEACOR Action, R&R Boats Action and OLB Action, attached hereto as **Exhibit B, C, and D**, respectively.

5

belong solely to the contracting parties, and no person can sue upon a contract except he be a party to or in privity with it.  Although a third-party beneficiary may enforce an agreement it stands to benefit from, the fact that a person might receive an incidental benefit from a contract to which he is not a party does not give that person a right of action to enforce the contract.") (citations, alterations and quotations omitted).  Additionally, even if Plaintiffs had rights under the Trade Agreement, they most certainly do not have a right to payment under this agreement because they did not provide *any services* to the Debtors postpetition, as the Complaint itself admits.  Having no right to payment under the Trade Agreement, Plaintiffs have no basis under that agreement to seek an "allocation" of such payment from the Court.

Similarly, Plaintiffs have no independent right to payment under the Essential Vendor Order.  Indeed, the terms of the Essential Vendor Order make clear that nothing in this order shall be construed as "a promise to pay any claim," which confirms that neither Plaintiffs nor any other parties could assert a right to payment—or an allocation of such payment—under this order.[11] Further, the Essential Vendor Order provides that "[n]othing contained in this Order shall be deemed to increase, decrease, reclassify, elevate to an administrative expense status, or otherwise affect *any claim to the extent it is not paid*."[12]  Accordingly, to the extent Plaintiffs base their request for relief on the Essential Vendor Order, this too fails.

Additionally, in Judge Vance's Order and Reasons, not only did the District Court conclude that GOL had not breached the Brokerage Agreement and, thus, SEACOR was not due anything from GOL, it specifically denied SEACOR's request for an "allocation," the same request

---

[11] Essential Vendor Order, ¶ 11

[12] *Id.* (emphasis added.)

Plaintiffs make here.[13]   For these reasons, "mootness" applies with even more force given the Objection, because without relying on the Brokerage Agreements for this action, as Plaintiffs now maintain, Plaintiffs have no legally cognizable claim to the Essential Vendor Payment from GOL.

### C.   Whether this Matter is "Core" is *Irrelevant*, Because There Is No "Related to" Jurisdiction from This Action

Instead of addressing GOL's arguments that there is no "related to" jurisdiction and the cases cited in the Motion in support, Plaintiffs devote much of the Objection to purported "critically" important "core" issues, arguing that this dispute is within the Court's "arising in" jurisdiction as a "core" proceeding under § 157.[14]   According to Plaintiffs, this dispute is a "core" proceeding because (i) "[t]he single count alleged by Plaintiffs in the Complaint would never exist outside of bankruptcy[;]" and (ii) the Complaint requests the Court "interpret and enforce" its prior Essential Order and allocate the Essential Vendor Payment.[15]

But, as the Fifth Circuit explains in a case cited in the Motion but ignored by Plaintiffs, "before a court can decide whether an action is a core or a non-core proceeding, it must first determine whether subject-matter jurisdiction under § 1334 even exists.  *In re TMT Procurement Corp.*, 764 F.3d 512, 527 (5th Cir. 2014)) (rejecting "core" jurisdiction argument where controversy involved non-debtor's right in non-estate property, emphasizing that a party cannot use "orders as jurisdictional bootstraps to allow . . . the bankruptcy court to exercise jurisdiction that would not otherwise exists") (citations, alternations and quotations omitted).  "To determine whether such jurisdiction exists, it is necessary only to determine whether a matter is at least

---

[13] *See* Order and Reasons, p. 25.

[14] *See* Obj., pp. 6-11.

[15] *Id.*, p. 8

'related to' the bankruptcy." *Corporate & Trustee Servs., Inc. v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999) (citations and quotations omitted).

Plaintiffs contend in the Objection that the district court's decision in *Rapid-Torc* provides no guidance to this dispute.[16] GOL disagrees. Plaintiffs are correct that *Rapid-Torc* involved a post-confirmation chapter 11 case, but that is as far as it goes. In fact, the *Rapid-Torc* court concluded the debtor's post-confirmation and concomitant potential narrowing of jurisdiction was *irrelevant* to its decision, emphasizing that there was no "related-to" jurisdiction "even under the ordinary § 1334 test." *In re Rapid-Torc,* 2016 WL 8710443, at *6.

Additionally, Plaintiffs assert the Court has jurisdiction to enforce the "Essential Vendor Order." But, unlike in the cases Plaintiffs cite in support, Plaintiffs themselves are not parties with rights under the Essential Vendor Order, and the enforcement of such order does not give Plaintiffs a right to allocation.[17] Simply put, Plaintiffs are not parties to the Trade Agreement—an agreement between the Debtors and GOL — and they have no rights under it.

The Debtors' disbursement of the Essential Vendor Payment to GOL does have a connection with the Debtors' bankruptcy—and even if a "core" proceeding exists from the Essential Vendor Order—this does not give the Court "related to" subject matter jurisdiction over this action among non-debtors. In fact, SEACOR expressed this to the District Court when it stated that "Bankruptcy proceedings and bankruptcy 'critical vendor' concepts [are] irrelevant and [have]

---

[16] *Id.*, n.13.

[17] *See Angel v. Tauch (In re Chiron Equities, LLC)*, 552 B.R. 674, 684 (Bankr. S.D. Tex. 2016) (finding subject matter jurisdiction to enforce and interpret its sale order where, unlike here, the claims at issue were "irreversibly intertwined with the enforcement of the Sale Order") (quotations omitted).

no bearing on the central issue before this Court."[18]  Only after losing before the District Court has SEACOR now performed a complete reversal of its position.

>       II.       **The Court Should Dismiss the Complaint Under Rule 12(b)(6) Because Plaintiffs Fail to State a Claim**

>               A.       **The Complaint Fails the Plausibility Test Under the Facts Alleged**

Plaintiffs argue at length in the Objection that they have stated a plausible claim for relief,[19] but they fail to even address the sole "implausibility" issue raised by GOL in the Motion.  Plaintiffs have failed to explain how the Complaint is "plausible" or even "possible" when it shows Plaintiffs were not parties who GOL was required—or permitted—to pay under the Essential Vendor Order or the Trade Agreement.  In fact, as raised in the Motion, the Complaint admits that "the [Essential] Vendor Order and the . . . Trade Agreement *required* vendors to provide *post-petition* services on same or better trade terms that existed pre-petition."[20]  This is also demonstrated by the Trade Agreement attached to the Complaint.[21]  Instead of addressing any of this, Plaintiffs merely argue in the Objection that the Court should not "weigh evidence," citing to a number of *pre-Twombly* cases in support.

The Complaint itself, however, shows Plaintiffs did not provide any services to the Debtors postpetition, as Plaintiffs' invoices are all limited to the prepetition period,[22] and that Plaintiffs

---

[18] *See SEACOR Marine LLC's Memorandum in Opposition to GOL, LLC's Motion for Summary Judgment* filed in the SEACOR Action (E.D. La. Case No. 24-02409, Doc. No. 46, p.20).  SEACOR also informed the District Court that the bankruptcy issues are "irrelevant to GOL's contractual obligations."  *Id.*

[19] Obj., pp. 13-16.

[20] Compl., ¶ 70 (emphasis added).

[21] *See* Compl., Ex. 4.

[22] Compl., ¶¶ 30-40.  Additionally, as noted in the Motion, in the Order and Reasons (page 24), Judge Vance found:

>  [T]he payment that GOL received was disbursable only to entities that, like
>  GOL, committed to continue to provide Cox with essential post-petition services
>  under Customary Trade Terms.  SEACOR was not such a company.  GOL

9

were not parties who GOL could pay under the Essential Vendor Order or Trade Agreement.  For this reason, Plaintiffs have not made a plausible claim for relief and the Court should dismiss the Complaint.  *See, e.g., Clewett v. Coverage One Ins. Group, LLC*, 2024 WL 1962895, *1 (S.D. Tex. May 3, 2024) (granting motion to dismiss where, as here, allegations in complaint were *incompatible* with claims brought); *Contiguity, LLC v. Conduent Business Servs., LLC*, 2024 WL 252068, at *3 (W.D. Tex. Jan. 22, 2024) (emphasizing, in granting motion to dismiss, plaintiff "pleads itself out of court," by alleging facts incompatible with asserted claims"); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 n.10 (5th Cir. 2007).

### B.      SEACOR's Claim is Barred by "*Res Judicata*"

In the Fifth Circuit, "[a] claim is barred by *res judicata* when: (1) the parties in the prior and present suit are identical, or in privity; (2) a court of competent jurisdiction rendered the prior judgment; (3) the prior judgment was final and on the merits; and (4) the plaintiff raises the same cause of action in both suits.  *Okpobiri v. Experian Info. Solutions, Inc.*, 2025 WL 1270299, at *3 (S.D. Tex. April 18, 2025) (citing *Proctor & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004)).  By the Objection, SEACOR disputes only elements three and four.  For the reasons below, and in the Motion, these elements are satisfied in this case.

Element three is met because the Order and Reasons and related Judgment is a final ruling on the merits.  *See Okpobiri*, 2025 WL 1270299, at *3 (stating "[g]enerally, a federal court's dismissal with prejudice is a final judgment on the merits for *res judicata* purposes") (citations and quotations omitted).  Plaintiffs assert that the Order and Reasons did not resolve the allocation of funds under the Essential Vendor Order and, thus, is not a final ruling.  In further support, Plaintiffs

---

therefore did not have the discretion to use the money it received from Cox to pay SEACOR's invoices either in whole or in part.

assert "[t]he district court did not hold that SEACOR was not entitled to an allocation."[23]  GOL disagrees.

In fact, in the Order and Reasons, now *reaffirmed*, after concluding GOL did not breach the Brokerage Agreement by failing to pay SEACOR the Essential Vendor Payment, the District Court held SEACOR was not entitled to any allocation of such payment.  In particular, the Order and Reasons states:

> But any improper allocation of funds under the Trade Agreement is something the debtor, and now the Chapter 7 trustee, can complain about, *not SEACOR*, who is not a party of the [Trade] Agreement or entitled to funds under it.  The available redress would be for payment to be deemed as applying to post-petition services that GOL has since provided COX or treated as a voidable preference. *The money would not be reallocated to SEACOR*.

Order and Reasons, p. 25-26 (emphasis added).  Accordingly, as to SEACOR and the allocation requested in this case, the Order and Reasons was a final judgment on the merits, it specifically considered but expressly rejected any allocation of the Essential Vendor Payment to SEACOR.  Judge Vance did not expressly leave open the opportunity for SEACOR to bring this action, as Plaintiffs would have the Court believe.  In fact, the Order and Reasons, now *reaffirmed*, forecloses any such opportunity.

Element 4 is likewise met.  As stated in the Motion "*[r]es judicata* considers claims that have been finally adjudicated or could or should have been raised in a prior suit."  *Id.*  The Fifth Circuit follows the transactional approach to the fourth prong of *res judicata*." *Id.* (citing *Ries v. Paige (In re Paige)*, 610 F.3d 865, 872 (5th Cir. 2010)).[24]  "The critical issue under this

---

[23] Obj., p. 22.

[24] SEACOR's reliance on *Brown* is inapposite.  The debtor in *Brown* relied on a state court's judgment in an attempt to preclude litigating the distinct issue of dischargeability—a question undisputedly within the exclusive jurisdiction of the bankruptcy court and not considered by the state court.  *See Brown v. Felsen*, 442 U.S. 127, 132-34 (1979).

determination is whether the two actions under consideration are *based on the same nucleus of operative facts, . . . rather than the type of relief requested, substantive theories advanced, or types of rights asserted . . . .*" *Id.* (emphasis added). Additionally, "making a determination of whether the same nucleus of operative facts is present revolves around the factual predicate of the claims asserted. *In re Paige*, 610 F.3d at 865.

SEACOR argues in the Objection at great length that the "claims" in the SEACOR Action are fundamentally different than the "claims" in this case.[25] But the test applicable to element 4 under *Paige* does not depend on differences or similarities of claims, as Plaintiffs wrongly suggest. Instead, the test is whether the claims revolve around the *same factual predicate*.

Here, the complaint in the SEACOR Action and the Order and Reasons both make clear *that action* and *this action* both arise out of the same nucleus of operative facts, revolving around the same factual predicate.

In the SEACOR Action, for example, SEACOR alleged in its complaint that:

> The Trade Agreement specifically provides that the payment was in satisfaction of debts incurred by Cox to GOL prior to its filing its petition seeking bankruptcy protection. The unpaid charter hire owed to SEACOR was among those pre-petition debts owed by Cox to GOL.[26]

SEACOR further alleged in the SEACOR complaint that "GOL is liable to SEACOR for: . . . failure to pay to SEACOR funds due to SEACOR which were, on information and belief, paid by Cox to GOL pursuant to the Trade Agreement . . ."[27] Both this Complaint and the SEACOR complaint involve the same Trade Agreement, the same bankruptcy order, and the same amount

---

[25] Obj., pp. 16-21.

[26] SEACOR Complaint, p. 3, XII.

[27] *Id.*, XIII.

12

of funds SEACOR alleges is owed by GOL and asks the Court to allocate in this action.[28] Accordingly, both this action and the SEACOR Action revolve around the same factual predicate and nucleus of operative facts.[29]

Further, in the Order and Reasons (and Judge Vance's recent order denying SEACOR's motion for reconsideration), not only did the District Court carefully and thoroughly consider the Trade Agreement and the Essential Vendor Order—which underpin and are the factual predicates for this case according to Plaintiffs—the District Court concluded that neither provided SEACOR with a basis for payment from GOL.  And, contrary to Plaintiffs' erroneous assertion, the District Court concluded that SEACOR was not entitled to any allocation of the Essential Vendor Payment.[30]  In apparent recognition of the controlling impact of the Order and Reasons, not only did SEACOR move the District Court to reconsider the Order and Reasons (now denied), it requested the Court "stay" its decision, pending the Court's determination of this action.[31]

While bankruptcy courts are afforded substantial deference when interpreting their own orders,[32] where a court of concurrent jurisdiction like the District Court makes specific findings with respect to an order of the bankruptcy court, those findings should be afforded the appropriate deference.  *See, e.g., Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479 (1981) (emphasizing

---

[28] *Compar*e Compl., ¶ 35 *with* SEACOR Complaint, p. 4.

[29] These same revolving facts stand in contrast to the disparate facts in *Superior Offshore*, relied upon by Plaintiffs. Obj., p. 21.  In *Superior Offshore*, the court concluded *res judicata* did not apply where one action revolved around money and shares of stock paid or transferred to each of the defendants while the other action against the same defendants revolved around a substantial dividend payment made to another party. *See Superior Offshore Int'l, Inc. v. Schaefer*, 2012 WL 5879608, at *5 (S.D. Tex. Nov. 20, 20212).

[30] Order and Reasons, pp. 25-26.

[31] *See SEACOR Marine LLC's Motion for Reconsideration* filed in the SEACOR Action (E.D. La. Case No. 24-02409, Doc. No. 67, p.2.

[32] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)

that "[i]t is black letter law, however, that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action"); *In re Friede Goldman Halter, Inc.*, 602 B.R. 307, 312 (Bankr. M.D. La. 2019) (explaining retention of jurisdiction over interpretation, enforcement, implementation or consummation of plan does not divest another court of concurrent jurisdiction to decide such issues); *In re Peterman*, 5 B.R. 687, 691 (Bankr. E.D. Pa. 1980) (stating that collateral estoppel and res judicata may apply where bankruptcy court has concurrent jurisdiction).  In light of these principles, SEACOR should not be permitted to evade the determinations made by the District Court, now *reaffirmed*, with respect to its rights under the Trade Agreement, the Brokerage Agreement or the Essential Vendor Order and ask this Court for a do-over, particularly where it was SEACOR who chose to file its original action in the District Court and asserted before the District Court that "Bankruptcy proceedings and bankruptcy 'critical vendor' concepts [are] irrelevant and [have] no bearing on the central issue before this Court."[33]

Accordingly, the elements of *res judicata* are met.  Therefore, as to SEACOR, the Court should dismiss the Complaint based on the *res judicata* effect of the Order and Reasons and related judgment.

---

[33] *See SEACOR Marine LLC's Memorandum in Opposition to GOL, LLC's Motion for Summary Judgment* filed in the SEACOR Action (E.D. La. Case No. 24-02409, Doc. No. 46, p.20).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).

Dated: December 17, 2025                    Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Todd A. Atkinson*
Todd A. Atkinson (TX Bar No. 24121426)
717 Texas Avenue, Suite 2100
Houston, Texas 77002
Telephone: (346) 998-7801
Email: todd.atkinson@wbd-us.com

-and-

Edward L. Schnitzer (admitted *pro hac vice*)
888 Seventh Avenue, 38th Floor
New York, New York 10106
Telephone: (332) 258-8400
Email: edward.schnitzer@wbd-us.com

*Counsel for Defendant GOL, L.L.C.*

15